315-0243 People of the State of Illinois, added by Justin Nicolosi v. Kyle Tetter, found by Mark Bishop Good morning, your honors. May it please the court, counsel, and Mark Fisher of the Appellate Defender's Office, and I'm representing the defendant in this case, Kyle Tetter. Kyle was convicted in a jury trial of aggravated criminal sexual abuse. Specifically, the jury found that between January 1st and May 1st, 2013, the defendant had sex with a 16-year-old girl, but he was at least 5 years older than she was. He was sentenced to a term of 4 years sex offender probation. The two issues are raised on appeal. The first issue, the defendant maintains that the trial judge abused her discretion and denied him a fair trial when she allowed the state to play for the jury a recording of what the complainant claimed was a voicemail message left on the defendant's cell phone. The defendant submits the state did not lay an adequate foundation for the playing of the tape, and furthermore, that it was prejudicial because it tended to undermine his affirmative defense that he reasonably believed the complainant was of legal age. He therefore asks this court in issue 1 to reverse his conviction and to remand the cause for a new trial. Alternatively, in issue 2, he argues that several Illinois statutes which impose severe lifetime restrictions on him that were automatically triggered by his conviction in this case are unconstitutional as applied to him. He therefore asks this court primarily in issue 2 to rule that he need not comply with these statutes. In argument today, I'd like to address both of these issues. In order to prove the defendant guilty here, the state had to establish that the complainant was at least 13 but younger than 17, that the defendant was at least 5 years older than she was, and that the two of them had sex. Evidence at trial was undisputed that the complainant was 16 years old, the defendant was 5 years and 9 days older than she was, and the two of them had sex. The only disputed question for the jury at trial was whether the defendant established in the state disproved the defendant's affirmative defense that he reasonably believed she was 17 or older. But there was conflicting testimony about whether or not Kyle was told that the complainant was 16 years old. It was undisputed that she had a profile page on a dating website listing her age as 18. Now, the complainant testified that at some point during the course of their relationship, they argued about something, and she called his cell phone and left a message referring to herself as a stupid 16-year-old. Defendant denied ever hearing such message. Over defense objection, the judge allowed the state to play a tape recording for the jury, which the complainant identified as the voicemail left on the defendant's machine. Defendant, again testified, said he never heard this message before. Defense argued that the state did not lay an adequate foundation in order to be allowed to play the tape. The judge overruled that objection. Later, defense moved for a mistrial, and that motion was denied. Defendant submits that defense counsel was correct that an adequate foundation was not laid, and therefore this recording should not have been played. Now, frankly, there's not a great deal of case law dealing with this type of situation. I have cited in the Booth a case from the state of Georgia where the prosecution was allowed to play a recording of a message allegedly left on the complainant's answering machine. And in that case, the court found, the Georgia court found, that an adequate foundation was laid because the complainant identified the recording as the message left on her machine. And in addition, there was evidence in that case that the prosecutor's office had gone to the complainant's residence and had removed that recording from her answering machine. I've also cited in the Illinois case where the defense wanted to play a 911 call, and the judge refused. But the court reversed, finding there was an adequate foundation because there was testimony identifying the recording as a 911 call, and it was pertinent to the facts of that particular case. And in addition, there was evidence in that case that the Chicago Police Department officers had gone to their 911 answering equipment and had taken the recording from that equipment, had turned it over to the defense in response to the defense request for the recording. And I've also cited Illinois Rule of Evidence 901b-6, which deals with authentication of a telephone call. And that's a little bit different from what we have here because we don't have a person speaking to another person's telephone call. But in any event, that's Rule of Evidence states that in order to admit a recording of a phone call, number one, there must be evidence that a call was made to a certain number, a particular phone number, and that the person who answered the call was the person who the caller intended to call. In this particular case, what the state needed to do, and which wasn't done, was to show that this recording was in fact left on the defendant's phone. Well, but in this case, you've got the, I guess we'll call her a victim, who testifies, that's my voice, that's the message, and that's the message I left on the defendant's phone. Correct. Why isn't that enough? Unfortunately, on the record here, we only have her word for that. Well, that's the case, yeah, I mean, a lot of people go to prison for a long time based on some of these words. Right, but here you're dealing with tangible evidence. And I would submit that if you uphold the judge's decision, which was that an adequate foundation was left, because she identified it as the message she left, and because she also said that he texted her in response, then, however, we only have her say so for both of those things. If you say that that's enough, it simply leaves too much room for potential abuse. For all we know, hypothetically, this recording could have been made the day before trial. Another hypothetical for all we know on this record, she might have intended to call the defendant's cell phone that day. And perhaps she misdialed and left a message on a friend's machine, and then this recording was taken from the friend's machine. I'm not saying these are things that happen, but the problem is we don't know, especially where the defendant says, I never heard it. In order to play that tape, I think you need something more than simply the complainant's testimony. Well, look, even in chain of custody things, I mean, there's always room for people to lie. And the chain of custody testimony is really only as good as the credibility of the people that are testifying about it. Yeah, I took this and I put it here. Well, in fact, I might have stuck it in the drawer somewhere, took it, left it in the back seat of their car. I mean, that risk is omnipresent, right? No question. No question. But those risks that somebody's lying about this is not enough to make it a bad foundation. Well, it's one thing, and other than the tape, this is really a he said, she said case, not something that they said. There were some other witnesses who testified about conversations with the defendant, and, again, he disputed those. But it's one thing if you said witness testimony and it's exclusively credibility. Again, the video recording, that's something more than just somebody say so, although it's still her identifying the recording as what she claims it is, but, nonetheless, that is tangible evidence. I mean, the courts have recognized that when you have videotape evidence or audio recording evidence, that's something a little bit stronger and something that can have much more weight with the trier of fact. You know, it's one thing for a police officer to say, oh, the defendant admitted this to me, but it's another thing where you have a tape recording or a video recording, the defendant actually saying that. That's much stronger for the prosecution in this case, certainly, that clearly underlines the affirmative defense. Well, and I can't argue with that. But, and that goes to my next question, and there was other evidence, testimony put on the defendant knew the victim's age. Well, her parents testified that they told him that she was 16. He admitted talking to them at various times but denied ever being told that. There was testimony from a police officer that he questioned the defendant that the defendant said they had sex on a handful of occasions, that initially he believed that she was of age. He admitted telling the officer that the final time they had sex was after he had learned that she was underage. He testified about that, said he was scared and intimidated, and so that was a falsehood, which again comes down to strict credibility. Well, and so I guess at the end of the day, does all of that render any error that might be involved with playing that audio tape, I mean, just harmless in the sense that it's cumulative, if that evidence came out there, it's still kind of a failure. I don't think it is simply because it's not going to be the case where you have credibility, but then you have maybe DNAs and physical evidence and eyewitness. Here, other than the recording, all of the evidence is really of the same kind. It's credibility. It's, you know, this is what I knew. This is what I told him. Well, this is, that's not what I was told. It's all statements. It's all credibility of the witnesses. And again, here you have this tangible evidence. Now, of course, even if there was proof that it was left on his machine, he could still say, I never heard it. And nobody's going to believe that. And the girl he's sleeping with left him a voicemail, and he didn't listen to it. I mean, you can say that all day, and that's probably all you can do. But in your case on credibility, the defense attorney is still able in this case to say, look, nobody came in here, there's no evidence where that message came from or whose phone or where or when it was made. So he's still got the credibility argument that. I would submit to the defense that something like this is so important that they have to establish this is where it came from. If they can't establish it, they can't play the tape. Again, I think there's just too much room for abuse here. So do we have to focus on the hypothetical that a message could have been recorded somewhere else? Or do we focus on the fact that this case, because there's no dispute it was on his phone or was retrieved from his phone, but the jury didn't learn that? No, unfortunately on this record, we don't even know that. Number one, there was no evidence presented at trial where this recording came from. Beyond that, there is no evidence in the record where this recording came from. Now we do know from evidence presented that at some point the police gained possession of his phone, but there was some testimony from an officer about a photograph that was found on that phone. But there is absolutely no evidence in this record or presented at trial that the recording was taken from the phone. Now is that a possibility? Of course it's a possibility, but there is nothing in this record establishing that. Counsel, two minutes. Thank you. I'm looking at page 14 of your brief, and I don't want to beat a dead horse, but you include Mason did testify as a rebuttal witness, but he did not testify that the recording was taken from defendant's phone. Correct. So you are saying there is, okay. We don't know. He testified as a rebuttal witness. He talked about a photograph coming from the phone. There's no testimony that this recording was found on that phone, and there's nothing in the record that didn't come into the jury. I appreciate you clarifying that. I misread your sentence. Thank you. Thank you, Your Honor. With respect to the second issue, I want to make clear, the defendant is not asking this court to strike these statutes down. He's not making a facial constitutional challenge to the statutes. What he's arguing is that clearly these statutes, I'm talking about the Sex Offender Registration Act, the Sex Offender Community Notification Law, other statutes that impose severe lifetime restrictions on where he can live or where he can go, what type of employment he can obtain, and other things as well, that they shouldn't apply to Kyle Tedder because they should apply to sexual predators, people who pose a risk to society. And there's nothing in this record showing that. In fact, I would submit the record shows the opposite. The pre-sentence report showed he had no criminal record. He had some traffic violations, lived at home with his mother, had a consistent record of employment. A sex offender evaluation was done in this case. It showed he was not at risk to reoffend and did not have any particular interest in young girls. And I think the judge recognized all this by imposing the sentence she did, which was four years sex offender probation, because this was a Class II felon. So she could have sentenced him to prison for as much as seven years, and I would submit that if she thought he was a danger, sexually or otherwise, to minors or adults or whoever, she would have sent him to prison. And clearly the sentence, as well as everything else in the record, indicates this is not a dangerous individual. He does not pose a risk to anyone. Further, the facts of this case are the two people met. They had a relationship. They had sex. State didn't have to prove forcible assault. That was not how this case was charged. That was not what the jury found to find him guilty. It's only a crime because of the age, and she was 16, so she's at the upper end. There's not a great disparity in age between the two of them. And for these reasons, just based on the facts of this case, I've been asking this court alternatively, as you've gone, to just very narrowly hold that these statutes have no logical application to Kyle Tedder, and are unconstitutional as applied to him, and then to go on to do one of three things, primarily to simply rule he may not comply with the statutes, alternatively to fashion a remedy that was fashioned by a court in the state of New Hampshire, and I cite that in the brief, where the court required the individual to face periodic risk or dangerousness hearings. And if it was determined at the conclusion of any of those hearings that he was not dangerous, did not pose a risk, then from that point forward, he may not comply. And as a final alternative, the defendant would note there are some sex offenders in Illinois who have to register and comply for 10 years, as opposed to a lifetime. And so as a final alternative, the defendant would ask this court to reduce his reporting and compliance requirements to 10 years. And the defendant, therefore, respectfully asks for these alternative forms of relief. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Mr. Fisher, that the people who submit that the judge in this case did not abuse her discretion in admitting this voicemail message, that the rules of foundation, as expressed in the Illinois Rules of Evidence and in case law, are basically pretty simple and I think can kind of be condensed down to one statement, that an item is authenticated and a foundation is laid properly by evidence that the item in question is what the proponent claims it is. That's Illinois Rule of Evidence 901A. And in this case, I think it's pretty clear that the victim in this case, the person who the prosecution claims left this message, testified quite clearly in rebuttal that this was the message that the recording that was played during the defendant's testimony was in fact the message that she left on his phone in January or February of 2013, informing him that she was 16 years old. It was her voice on the phone. She testified. It was her voice. And the people who submit that the trial judge was 100% correct in concluding, by denying the motion for the mistrial, the motion for the new trial, that a proper foundation was laid in this case. So defense counsel could have weakened your credibility by cross-examining her on that point? Absolutely. How do you know it was received but he couldn't do that? Because I think the record suggests it was retrieved from his phone. So cross-examination wasn't possible? I agree with Mr. Fisher that I believe the record was unclear that this was – that there was nothing expressly in the record that this was taken from the phone. I think it was – I believe that it was unclear. Because if I remember correctly writing this brief, I had a paragraph that was going to that point and I couldn't quite tie it together because I believe that was kind of a fault of the prosecutor in that point for not pulling that information from Detective Mason. But I do believe that kind of veering into harmless error, I think these kind of – whether the proper foundation was laid and the harmless error argument kind of blend together, that nothing in the presentation of this voicemail and playing it for the jury undercut the defendant's defense at all in this case. The defendant still was able to testify, as he did, that he never heard this message. And the fact that the victim had already testified that she left this message. So the evidence was already before the jury that this – the evidence by way of testimony from this victim was already in front of the jury that she had left it. So any benefit that the state got from playing the message was minimal, if anything. Because, again, the defense was clearly still in play that he reasonably believed her to be 17 years of age or older. And clearly they went forward with that defense and that the people would believe that because of that evidence in play, that the testimony of the victim, that this error was harmless. What about – what do you have to say about Mr. Fisher's unconstitutional as applied argument with respect to the reporting staff? Well, Your Honor, Mr. Fisher said that the defendant in this case did not pose a risk. And that the people would strongly disagree with that. Well, hadn't this girl publicly identified herself on a dating website as being 18 years old? Yes, she also explained that she didn't really have a choice as to what her age was as entered into this website. It automatically puts 18. The website, once you sign up and you create your profile, it puts you at 18. You have to admit that you're 18 to get on the website because they don't want minors doing that, right? That's understandable, yes. So she had a choice. One would be not to put your name and information on the website. Sure, sure. But at the same token, I think that the defendant has a responsibility to know exactly who he is. But even the trial judge found – so we've got a 21-year-old guy who has at least at the outset had reason to believe this girl he's sleeping with is 18, which is perfectly fine, and has had these restrictions on this girl for the rest of his life on this thing. It's relatively draconian, no? I would agree with that, especially in relation to the sentence that he got. And maybe I think that's what strengthens the defendant's argument here is that in the relationship to the actual punishment that he was given, 180 days in jail, four years of sex offender probation, when he could have gotten seven years in prison, I think strengthens his argument on this case. But I think with regard to the restrictions, but I think that case laws established, including the cases from the first district in the last couple of years, that there is a reason that these statutes exist. Well, there are. And personally, I think if the guy's really evil on the threat, he ought to stay in jail. And now they've got so many people are listed, look them up anywhere, and there's so many people registered that the lists are meaningless because nobody can know who's what. And plus people, there's cars and automobiles, so to what extent they're effective. But as far as this defendant, while there are reasons for him, you look at this defendant, the facts of this case, and does the record suggest that he's a guy that you're afraid is going to move down the street from your house where you've had kids? Maybe not, but I think there's different types of risks and dangers that exist with these individuals. And I've got to go back to the basis for the law that prohibits sex with individuals that are under 17, and that obviously the legislature and the courts have affirmed this, that there's an inherent risk in individuals who have intercourse with certain age individuals, and that there's certain psychological as well as physical harms that are inherent to these acts, and that the minors have these types of issues going forward when people engage in sex with them, whether or not they physically, I don't want to use the word consent, because that would use that too much, but you know what I mean. It's not a forceful sex situation, but nevertheless, even though they want to have sex with this person, there are harms that these statutes are supposed to eradicate and supposed to prevent them from suffering going forward. And based on that, I think there are dangers and there are risks to every defendant, regardless of the specific facts of this case. And so that's why people would submit that. Well, I mean, it would have a different case if the defendant were 40 years old, for example, and found even 18-year-olds and somebody, you know, and if you heard that your neighbor, 18-year-old, 21-year-old, was dating an 18-year-old girl, you probably wouldn't be horrified. No, no. You had to draw a line somewhere. I understand that. I guess with an as-applied constitutional challenge, you do have to figure out where that line is drawn, but the people would stand firm on their position that there is inherent risk and harm to these young people, whether physically or psychologically, and that's the basis of these rules. And they drew the line at under 17, and they did so for a reason. Well, I mean, there is risk to harm, but the point is that there's no evidence that this guy is at risk of any future harm, and I think the courts have said these statutes are punishment, which seems to me to defy common sense, and that if he's not at risk, then basically, I mean, he's SOL. Sure, sure. But what if these restrictions, Your Honor, were wiped out and he has sex with another 16-year-old or 15-year-old who has, you know, harmful repercussions from that for whatever reason? There's nothing stopping him from doing this again. Even with the restrictions, there's nothing stopping him from doing it again. Sure, sure, understandable, but maybe the fact these restrictions exist will guide his behavior going forward. Do you have any conviction for your probation? Maybe, maybe, but there's a lot of... I may perhaps, Your Honor, but there's these offenders, and any type of offender recidivates all the time, and we've seen that. There can be young pedophiles as well. Sure. And 16 could be his target for the rest of his life. Of course, sure. You know, and to see all these offenders, well, it's not a one-size-fits-all. It should be. I mean, look, if this had been a 12-year-old girl or a 14-year-old, another story. Sure. But we've got a 16-year-old who represents herself in the 18, at least at some point at the beginning of the relationship, and a 21-year-old fellow, and that hardly qualifies him as a pedophile, and it just seems that if these restrictions stay in place, this fellow's life is ruined. Yeah. Is that okay with you? I guess I'll put you in the spot. I guess that's okay with the State? Boy, I guess I get to speak on behalf of the whole State. I guess I always do. It really feels like I am now. Yeah. I understand exactly where you're coming from, Justice Schmidt, and I will leave it at that. I think I do. All right. But that having been said, the people would request that this Court affirm the results from below, and if there are any other questions, I'd be happy to answer them. Yes, ma'am. Thank you, Mr. Nichols. Mr. Fischer and Rebecca. Thank you, Your Honors. With respect to the second issue, I think it's important to point out for what it's worth, there's nothing in the record showing that Kyle Tedder had sex with other underage girls, and there's not even really anything in the record showing he had sex with anyone other than this complainant, so it doesn't appear to be a serial offender, and I think had there been such evidence, the judge probably would have sentenced him to prison. I think those circumstances or the absence of those circumstances also show that he simply is not a danger. Counsel mentions that there's some harm to the complainant, and the defendant isn't necessarily denying that, although there's no particular showing in this case. But the defendant is only asking this Court to overturn the conviction, and he was prosecuted as a conviction on his record. He has to comply with the probation. Here we're talking about the sentence, and I think, unfortunately, the legislature is kind of swept too broadly with these statutes. There are other forms of aggravated criminal sexual abuse involving force, and circumstances that I think we could all agree are worse than what you have here, and I think the interior legislature should have either excluded this type of offense from the statute or at least set forth other protections. They mentioned the possibility of risk hearings. But even if you want to say, well, no, Fisher's going too far. There are some people who violate this subsection of the statute whose society would need to be protected from. I wouldn't disagree with that. Again, the defendant is only asking this Court in this case to find the statute unconstitutional as to him, and so really is only asking for very narrow relief as to issue two. I'd also mention that certainly in the brief and in the argument today, it talked about the imposition on the defendant because, of course, that's the focus of these statutes. But for what it's worth, and I think, Your Honor, they've mentioned something about this, I think it tends to dilute the registry for including people like Kyle Tedder with people whom society needs to be protected from. I don't think that really fulfills the purpose of the statute. In addition, there is, and compared to Kyle, it's probably fairly small, but there's some bit of onus on the police here. Defendant has to register periodically. They have to be available. I assume it probably doesn't take that long, probably just a matter of paperwork, but they have to be available to allow him to do that. If he doesn't, they have to kind of keep tabs on him. If he goes to a place, a public park, where he's not supposed to be or he's living someplace, police probably have to go out and investigate that, and that would seem to interfere with police resources, and, again, not really to fulfill the purpose and the intent of the statute. So, again, the defendant is only arguing that under the defense of this case, that he should not have to comply with these statutes for 10 years or the periodic risk hearings, the alternatives I've set forth in Issue 2. With respect to Issue 1, I quoted this in my opening brief, but I'll mention it. I think it bears repeating. This was a quote from the Second Circuit Court of Appeals in a case back from 1967. So the tape recordings often have a persuasive, sometimes dramatic impact on a jury, and that's, again, where I say that the tape recording, I think, is different in kind from the rest of the evidence that was presented in this case, which was a matter of credibility. He says this, she says that. What did he know? What did he not know? Yes, the credibility goes to the recording, too, but once they hear that recording, they're likely going to accept her testimony that that's the call left on this machine, and I think that's different in kind than just simply credibility. And the last thing I'll say with respect to Issue 1 is the judge found there was an adequate foundation, number one, because she identified the call, but number two, because she said he responded to her with a text. And unfortunately on this record, we don't have any evidence of that either. Now, you know, maybe she deleted the text, but if the text came back to her machine, whether it was a cell phone, landline, what have you, you would think that maybe they could have found that and presented that, and that wasn't presented either in this case. Thank you. So respectfully, the defendant submits he was denied a fair trial in Issue 1 and asks your honors to reverse the ruling for a new trial, or alternatively, in Issue 2, just simply to hold that given the facts of this case and the personal characteristics of Mr. Tedder and the sentence imposed here, that it just simply makes no sense to apply these very severe lifetime statutes to him and ask for the alternative relief in Issue 2. Thank you, your honors. Thank you. Thank you both for your arguments today. The court is now in under advisement. The defense has a written disposition. Thank you. We will now go to the purpose of court.